[No. A093924. First Dist., Div. Two. July 25, 2001.)

ARLENE ROBERTSON, Petitioner, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
PETER S. BROOKS, Individually and as Representative, etc., Real Party
in Interest.

**COUNSEL**

Law Offices of Cary L. Dictor and Cary L. Dictor for Petitioner.

No appearance for Respondent.

Law Offices of Mark E. Rubke and Mark E. Rubke for Real Party in Interest.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

Petitioner Arlene Robertson (Robertson) seeks a writ of mandate to overturn an order of the trial court overruling her demurrer to real party's second amended complaint. That complaint implicated title to real property, including Robertson's home, in Marin County, and her demurrer was based on statute of limitations grounds. In overruling it, the trial court held that an action under Civil Code section 3412 to cancel "a wholly void instrument can be brought at any time," i.e., is not subject to any statute of limitations. We issued an order to show cause and, after briefing and oral argument, now grant the petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

According to the allegations of both the first and second amended complaints filed in this action, in 1949 Inez Brooks, now deceased, executed a quitclaim deed to approximately 35 acres of real property in the Muir Beach area of Marin County to her husband, Charles Brooks, now also deceased. That quitclaim deed was apparently part of a divorce settlement between the couple.

Charles Brooks apparently remarried and thereafter sold off parcels or portions of the land conveyed to him by the quitclaim deed from his former wife to various and sundry individuals, including Robertson or her predecessors in interest, to whom he allegedly sold a 1.5-acre parcel in 1959.

Real party in interest Peter S. Brooks (Brooks) is the sole child of Charles and Inez Brooks. He brought this action both individually and as a representative of his late mother's estate against 25 named individuals and "all persons claiming any legal or equitable interest" in any portion of those 35 acres. The action seeks to declare void both the 1949 quitclaim deed and two other related instruments on the ground that his mother was mentally incompetent at the time she executed the deed.[1] His first amended complaint filed in August 2000[2] was labeled as one for "Declaratory Relief, Imposition of Constructive Trust, Quiet Title, Negligence, Accounting and Damages."

---

[1]The other two instruments attacked in the action were a 1958 "Substitution of Trustee Under Deed of Trust" signed by an allegedly still-incompetent Inez Brooks in 1958, and a 1959 deed of reconveyance signed by an attorney who is alleged to lack "any right or capacity to act on behalf of Inez Brooks."

[2]The record before us does not reveal when the original complaint was filed by Brooks.

That complaint set forth seven causes of action, none of them specifically labeled or entitled as to their theories of relief. However, via his prayer for relief Brooks sought, first of all, a declaration that the quitclaim deed and two ancillary documents were "void or voidable because before, on, and after said date Inez Brooks was of unsound mind and lacked legal capacity" to execute them and that, as a consequence, at the time of her death, Inez Brooks "retained a tenancy-in-common ownership interest in the various parcels of real property" involved, which interest was presently held by Brooks and the Inez Brooks estate. It also sought imposition of a constructive trust on the various parcels of property, compensatory damages, and an accounting.

Robertson demurred to the first amended complaint on, principally, statute of limitations grounds. The trial court sustained the demurrer on this ground, but gave Brooks leave to amend as to six of those causes of action. In its tentative ruling, which it later referenced in and attached to its order, the court stated: "Plaintiff seeks to avoid the bar of the statute of limitations by arguing that these causes of action are based on Civil Code, section 3412. Plaintiff's first amended complaint is not framed to 'cancel' any instruments, but to obtain other relief [citing specific paragraphs of the prayer for relief of the first amended complaint]. Further, the rule cited by plaintiff applies only where an instrument is 'wholly void.' [Citations.] . . . His allegations would support a finding that . . . would make the instruments voidable. [Citation.] Plaintiff will be allowed an opportunity to amend the pleading in case the allegations can be re-framed to state a cause of action under section 3412, or on some other theory."

On November 27, 2000, Brooks filed a second amended complaint, the operative complaint for purposes of this petition. It was entitled: "Second Amended Complaint for Cancellation of Instruments, Declaratory Relief, Quiet Title, and Damages." This version included six causes of action,[3] this time with "labels" underneath the numerical title of each. Those labels were, for the first three causes of action: "Cancellation of Instrument." For the ensuing causes of action, they were, respectively, "Declaratory Relief," "Constructive Trust," and "Quiet Title."

The first cause of action of this version of the complaint alleged that the 1949 quitclaim deed "is void in that Inez Brooks, when she signed the said quitclaim deed, was mentally incompetent . . . ." The prayer for relief as to the first cause of action asked that "said quitclaim deed be declared void" and defendants ordered "to cancel it."

---

[3]As noted above, the demurrer to one of the seven causes of action in the first amended complaint was sustained without leave to amend.

On December 26, 2000, Robertson filed a demurrer to the second amended complaint, also on statute of limitations grounds. Simultaneously, she filed a motion to strike, contending that certain "late discovery" tolling allegations in that complaint should be stricken as "irrelevant, false and improper." In support of this motion, Robertson filed a request for judicial notice of various pleadings filed in prior Marin County actions, copies of which were attached. These included (1) two 1992 creditor claims filed by Brooks against his father's estate, one of which asserted a defect in the land titles to certain Muir Beach properties because of his mother's "unstable physical and mental condition" and (2) a complaint and amended complaint filed in 1994 by a representative of the estate of Inez Brooks seeking to challenge land titles in Muir Beach based on the same 1949 quitclaim deed, and also reciting Inez Brooks's mental illness.

Via a tentative ruling issued before the noticed hearing, the trial court indicated that it was inclined to overrule Robertson's demurrer because, it stated, there was no statute of limitations applicable to actions seeking to void instruments brought under Civil Code section 3412. After oral argument at a hearing on January 26, 2001, the court adhered to that ruling in its formal order.

Robertson filed this petition for a writ of mandate seeking to overturn that ruling. In it, she alleges that the 1.5 acres of real property at issue (allegedly conveyed to her and others by Charles Brooks in 1959) is her home. She alleges: "Until these present legal proceedings, petitioner had no notice or knowledge whatsoever of any adverse claim to her home, either from Real Party in Interest, from Inez Brooks, from the estate of Inez Brooks, or from any other person, party or entity."

## III. DISCUSSION

■ Civil Code section 3412, under which this action is brought, appears in title III, chapter 2, article 6, of the Civil Code. Title III is entitled "Specific and Preventive Relief," chapter 2, "Specific Relief," and article 6, "Cancellation of Instruments." Presently, section 3412 is the first provision of that article; it provides: "A written instrument, in respect to which there is reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." (Civ. Code, § 3412.)

This provision was expressly relied upon by Brooks in opposing Robertson's demurrer to his second amended complaint[4] and was, as already noted, the statute upon which the trial court expressly relied in overruling that demurrer. The question raised by the present petition is, therefore, what, if any, statute of limitations applies to actions brought under it and, even more particularly, actions brought under it impacting the title to or possession of real property. The trial court, citing both Witkin's text on California Procedure and *Hironymous v. Hiatt* (1921) 52 Cal.App. 727, 736 [199 P. 850] (*Hiatt*), ruled that "[a]n action to cancel a wholly void instrument can be brought at any time."

The section of the Witkin text cited by the trial court appears in the chapter entitled "Statutes of Limitations" and under a subheading reading "No Limitation." The specific section is entitled "Other Proceedings" and reads in relevant part: "*Cancellation of Void Instrument.* An instrument wholly void can be disregarded or an action to cancel it under C.C. 3412 brought at any time." (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 458, ¶ (2), p. 580.) The only authority then cited by Witkin for this proposition is *Hiatt*.

In *Hiatt*, the plaintiff was suing under Civil Code section 3412 to cancel a promissory note which she had given to the named defendants, who were alleged to be trustees for a certain minor (a granddaughter of the plaintiff's deceased husband). Her complaint alleged that, in 1904, she had given those trustees a note for $1,000 payable in five years. Attached to the note was a writing, signed by the defendant trustees, representing that they would collect the 6 percent interest on the note and invest it for the benefit of the named minor. Nine years later, in 1913, the principal sum of the 1904 note had not been paid, but the plaintiff then gave the same defendants a new note, also for $1,000, also accruing interest at 6 percent, and with the same written conditions, i.e., use of the interest for the benefit of the named minor. But in her suit, the plaintiff claimed that, although she had paid the defendants $840 in interest (apparently on the 1913 note), all of that amount was still being retained by the defendant trustees, and none of it used for the minor's benefit. Her suit alleged that she gave the note to the defendant trustees "as a voluntary act, never having received from said defendants, or any of them, any consideration of any kind or character for the 'signing and executing of said note' and that 'by reason thereof the same is void.' " (*Hiatt, supra,* 52 Cal.App. at pp. 729-730.) She also demanded repayment of the $840 interest she had paid on the note. (*Id.* at p. 730.)

[4]In his opposition to that demurrer, Brooks argued: "Defendant incorrectly argues that plaintiff's claim is for the recovery of real property. Instead, plaintiff seeks to cancel three instruments under *Civil Code, Section 3412* . . . ."

The Modoc County Superior Court agreed with the plaintiff's contentions and held, after a 1919 trial, that the note was, as the plaintiff contended, void. (*Hiatt, supra,* 52 Cal.App. at p. 730.) Among the grounds for the defendants' appeal were the statute of limitations, laches and estoppel. The appellate court held that these defenses "are not well taken in this case." Its explanation for this ruling forms the basis for Witkin's citation of *Hiatt* and the trial court's reliance on it in this case: "If the invalidity of an instrument in writing outstanding against a person is due to fraud or accident or mistake, we entertain no doubt but that an action under section 3412 might come within the bar of the statute, if it were not brought within the statutory period of limitation after the discovery by the person subject to be prejudicially affected by the instrument of the fraud or the accident or the mistake; and in such case the circumstances might be such as to justify the plea of laches. The present case, however, presents a much different situation. The instrument involved herein was subject to be voided at any time the maker thereof conceived it to be the more consistent with his own interests to recall it. A party might in perfect good faith give to another his note without a consideration and later discover the improvidence of such gift, or the motive or reason immediately prompting the gift might have ceased to exist, or his financial condition, through untoward circumstances arising after the gift, might have become so changed as to make the burden thereof, should he undertake to sustain it, extremely vexatious and embarrassing to him or his business interests. He is under no legal obligation to pay the note, and it is solely up to him to say at any time whether he will or will not satisfy it. It would, therefore, be absurd to say that either the statute of limitations or laches could be invoked against the maker of such a writing in an action to void it." (*Id.* at p. 736.)

To use an overworked cliche, hard cases make bad law. In the passage just quoted, the distinguished (we are sure) jurists of the early 20th century Third District Court of Appeal may well have done the right thing (i.e., prevented some rascally trustees in Modoc County from keeping moneys intended for a minor), but in the process they regrettably made some bad law.

In the first place, Civil Code section 3412 is not a statute of limitations, nor does it contain one within it. It is, as are many sections of that code, just maxims of law generally applicable to civil and commercial transactions and relationships. To find out whether actions intended to enforce rights recognized in the Civil Code are timely, we almost invariably look to the provisions of the Code of Civil Procedure.

It is true, as Brooks points out in his opposition to the petition, that there are some actions as to which there are no applicable statute of limitations.

(See examples cited in 3 Witkin, Cal. Procedure, *supra*, Actions §§ 456, 457 and 458, ¶¶ (1), (3) and (4), pp. 578-580.) But an action to cancel an instrument under Civil Code section 3412 is not one of them, and both *Hiatt* and the Witkin text are flatly wrong in, respectively, so holding and stating.

In *Moss v. Moss* (1942) 20 Cal.2d 640 [128 P.2d 526, 141 A.L.R. 1422] (*Moss*), the plaintiff sued for a declaratory judgment that a decade-old property settlement agreement between him and his former wife, along with a later modification of it, were void as against public policy (because conditioned upon an agreement to secure a divorce). The trial court denied relief, principally upon the ground that the plaintiff was in pari delicto and the Supreme Court found no abuse of discretion in that ruling. But the plaintiff also argued on appeal that "the complaint also alleges facts stating a cause of action for cancellation of the agreement." (*Id.* at p. 644.) As to this claim, however, our Supreme Court held that the four-year limitations period of section 343 of the Code of Civil Procedure[5] applied. Citing a broad range of cases, including actions to set aside a deed made under undue influence, a proceeding to set aside a satisfaction of judgment, and actions to set aside void bonds, the court concluded: "Although plaintiff contends that laches and lapse of time cannot be defenses in an action to cancel an instrument void because contrary to public policy . . . equitable factors . . . may not be used as a means of avoiding the express mandate of the statute of limitations. We must hold, therefore, that if plaintiff had a cause of action for cancellation, it is now barred by section 343 . . . ." (20 Cal.2d at p. 645.)[6]

Three years after *Moss* was decided, Division One of this district relied on it in an action expressly brought under Civil Code section 3412, ruling: "Ordinarily a suit to set aside and cancel a void instrument is governed by section 343 of the Code of Civil Procedure." (*Zakaessian v. Zakaessian* (1945) 70 Cal.App.2d 721, 725 [161 P.2d 677] (*Zakaessian*); see also, to the same effect, *Trubody v. Trubody* (1902) 137 Cal.172, 173 [69 P. 968]; *Wade v. Busby* (1944) 66 Cal.App.2d 700, 702 [152 P.2d 754]; *Estate of Pieper* (1964) 224 Cal.App.2d 670, 688-689 [37 Cal.Rptr. 46]; cf. *Leeper v. Beltrami* (1959) 53 Cal.2d 195, 212-213 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803].) The only exception to this rule, the *Zakaessian* court indicated, would be as and when fraud or mistake were involved, in which case the three-year period of section 338, subdivision (4) would apply. (*Zakaessian, supra,* 70 Cal.App.2d at p. 725.) In short, if there were ever any

---

[5]All further statutory references are to the Code of Civil Procedure, unless otherwise noted.
[6]This wording and that of later authority (see *post*) make clear that, contrary to the suggestion of counsel for the real party in interest at oral argument, statutes of limitations apply whether the document under challenge is asserted to be "void" or "voidable."

merit to the position that there is no limitations period for actions brought under Civil Code section 3412 to declare an instrument void, post-*Moss* and *Zakaessian* there certainly is none.[7]

The *Hiatt* court's view of things is especially inappropriate when applied, as here, to actions involving the title to or possession of real property. The Code of Civil Procedure contains several limitation of action provisions expressly applicable to such actions, among them sections 318, 319 and 328. The first of these, section 318, deals with actions impacting the *possession* of real property, and provides: "No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question, within five years before the commencement of the action."

Section 319 also provides a five-year statute of limitations for actions impacting the *title* to real property: "No cause of action or defense to an action arising out of the title to real property . . . can be effectual, unless it appear that the person prosecuting the action, or making the defense, or under whose title the action is prosecuted, or the defense is made, or the ancestor, predecessor, or grantor of such person was seized or possessed of the premises in question within five years before the commencement of the act in respect to which such action is prosecuted or defense made."

Section 328 follows a few sections later and deals with the issue of as and when the statute of limitations may be tolled. It provides: "If a person entitled to commence an action for the recovery of real property, or for the recovery of the possession thereof, or to make any entry or defense founded on the title to real property . . . is at the time title first descends or accrues either under the age of majority or insane, the time, not exceeding 20 years,

---

[7]Of the 10 reported California cases that have cited *Hiatt*, nine pertain to the merits and not its statute of limitations/laches holding. The 10th, we are frank to note, was this court's opinion in *Duty v. Abex Corp.* (1989) 214 Cal.App.3d 742, 749 [263 Cal.Rptr. 13], where we cited it to support the proposition that "case law has established that certain other proceedings with respect to which the Legislature has not specified any statute of limitations may also be brought at any time." Right principle, wrong example.

Outside of California, we note that the Supreme Court of Guam has recently come to essentially the same result as we do here on extremely similar facts and on the basis of an identical statute. (See *Perez v. Gutierrez* (Guam Terr. May 15, 2001, No. CVA98-35) 2001 WL 505898.)

By way of contrast, even the Third District has ignored *Hiatt* on this point. In *Merry v. Garibaldi* (1941) 48 Cal.App.2d 397, 401 [119 P.2d 768], that court held that laches was a valid defense to an action to cancel a deed of trust and promissory note brought on the ground that the purported signatures of the plaintiff thereon were forgeries. *Hiatt* was not even cited, much less distinguished.

during which the disability continues is not deemed any portion of the time in this chapter limited for the commencement of the action, or the making of the entry or defense but the action may be commenced, or entry or defense made, within the period of five years after the disability shall cease, or after the death of the person entitled, who shall die under the disability; but the action shall not be commenced or entry or defense made, after that period." (*Ibid.*)

The overall effect of these sections is manifest: actions relating to *either* the possession of *or* title to real property (or, of course, both) must be commenced within five years from the end of possession or seizin of that property by the claimant or his or her predecessor in interest, *unless* his or her chain of title includes a person who was either a minor or insane,[8] in which case a tolling period not to exceed 20 years is allowed, provided that in any event the action is commenced within no more than five years after the end of the disability. (See 3 Witkin, Cal. Procedure, *supra*, Actions § 452, p. 574; 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, §§ 114-116, pp. 332-334; *McKelvey v. Rodriquez* (1943) 57 Cal.App.2d 214, 223-224 [134 P.2d 870].)

The instant action is clearly one encompassed by these sections of the Code of Civil Procedure. The first cause of action of the second amended complaint, the cause of action seeking cancellation of the 1949 deed, alleges: "Defendants, and each of them, took possession of the property described in the quitclaim deed and have refused to restore possession of said property to plaintiffs[9] and each defendant has remained in possession of it ever since." Similarly, the fourth cause of action, for declaratory relief, recites that a judicial controversy exists as to, among many other things, whether Brooks "presently retain[s] the tenancy-in-common ownership interest which Inez Brooks possessed at the time of her death in the various parcels of real property described in Paragraph 19 above." And the sixth and final cause of action, for quiet title, alleges that the defendants "claim an interest adverse to Plaintiffs in the above-described parcels of real property in that said Defendants deny that Plaintiffs or their predecessor in interest Inez Brooks had any ownership or other interest in said parcels of real property at the respective times when Defendants claim to have acquired their respective ownership interests in said parcels of real property."

As also noted earlier, the extensive prayer for relief then asks not only that the 1949 deed be declared void but, additionally, that "defendants be ordered

---

[8]Query whether the allegations of the second amended complaint even trigger the tolling-for-insanity provision of section 328. Those allegations speak of Inez Brooks's mental incompetency, whereas section 328 talks of insanity. There is a difference. (See, e.g., *Wade v. Busby, supra,* 66 Cal.App.2d at pp. 702-703.)

[9]Brooks's complaint was brought on behalf of himself individually and *qua* "representative" of his mother's estate. It thus refers to him in the plural throughout.

to reconvey the described property . . . to plaintiffs," for a declaration that "Plaintiffs presently retain the tenancy-in-common ownership interest which Inez Brooks possessed at the time of her death in the various parcels of real property," and for a judgment quieting title in them to each and every parcel, including Robertson's, listed in the complaint.

This is, thus, clearly the sort of action covered by Code of Civil Procedure sections 318, 319 and 328. The fact that Civil Code section 3412 underlies the right being asserted in no way lessens the applicability of the statutes of limitations provided in the Code of Civil Procedure for real property-related actions. The trial court thus erred in overruling petitioner's demurrer.

## IV. DISPOSITION

Let a peremptory writ of mandate issue commanding respondent superior court to vacate its order overruling petitioner's demurrer to the second amended complaint and to enter an order sustaining that demurrer. We leave to the trial court to determine, in the first instance, whether the demurrer should be sustained with or without leave to amend. Costs are awarded to petitioner.

Kline, P. J., and Ruvolo, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied October 17, 2001. Kennard, J., was of the opinion that the petition should be granted.